UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL JOSEPH TISONE,

    Petitioner,

v.                                  Case Nos.:  2:24-cv-1052-SPC-NPM
                                                              2:22-cr-39-SPC-NPM

UNITED STATES OF AMERICA,

    Respondent.
                                   /

## OPINION AND ORDER

Before the Court is Petitioner Daniel Joseph Tisone's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1).[1]

### Background

Beginning in March 2020, Tisone engaged in a scheme to defraud the Small Business Administration (SBA) and financial institutions for covid relief funds. Tisone submitted fraudulent applications for Economic Injury Disaster Loans (EIDLs), Paycheck Protection Program (PPP) loans, and Main Street Lending Program (MSLP) loans. The applications falsely claimed that dormant businesses Tisone had previously registered employed people and

---

[1] The Court cites to documents from Case No. 2:24-cv-1052-SPC-NPM as "Doc. _" and documents from 2:22-cr-39-SPC-NPM as "Cr-Doc. _."

were actively doing business, and that the funds would be used on qualifying business expenses. Tisone supported the applications with fake tax returns and payroll documents, lied about his status as a felon, and fraudulently used his father's identity. Tisone fraudulently obtained $568,200 in EIDLs, $573,954.17 in PPP loans, and a $1,500,000 MSLP loan. Tisone originally sought a $9 million MSLP loan using the same fraudulent documents. Tisone used the fraudulently obtained $2,617,447.17 in COVID-19 relief money to purchase stocks and securities, a boat, a diamond engagement ring, and three real properties in Naples, Florida. (Cr-Doc. 54 at 23-27).

On March 30, 2022, the FBI executed a search warrant at Tisone's residence. They found more than 800 rounds of assorted ammunitions. Tisone—a convicted felon—was prohibited from possessing firearms and ammunition. (Cr-Doc. 54 at 27-28). Tisone was arrested the next day. On April 13, 2022, attorney Mark Eiglarsh entered his appearance for Tisone. A grand jury returned an indictment a week later, charging Tisone with four counts of wire fraud, six counts of bank fraud, two counts of aggravated identity theft, five counts of illegal monetary transactions, and one count of possession of ammunition by a convicted felon. (Cr-Doc. 19). The government made discovery available to Eiglarsh on May 5, 2022, and sent him a USB drive containing a courtesy copy of discovery the next day. (Cr-Doc. 35).

While the case was pending, Tisone became dissatisfied with Eiglarsh. He registered the internet domains www.markeiglarshreview.com and www.markeiglarshreviews.com. According to Eiglarsh, Tisone posted a scathing one-star review and admitted his intention to damage Eiglarsh's professional reputation if he did not get the sentencing result he wanted. (Doc. 13-1 at 2). On July 27, 2022, Tisone and Eiglarsh entered into a confidentiality and non-disparagement agreement. It included this clause:

> Non-Disparagement. The Parties understand and agree that, at all times following the execution of this Agreement and even after the Action comes to a conclusion and the Parties no longer have an Attorney-Client relationship, the Parties shall use reasonable and good faith efforts to ensure that neither party engages in any vilification of the other, and shall refrain from making any false, negative, critical or disparaging statements, implied or expressed, concerning the other. The Parties further agree to do nothing that would damage the business reputation or good will and jeopardize the other party's business relationship with existing or prospective clients or business relationships. For purposes of this section, "disparage" shall mean any negative statement, whether written or oral, about the other Party.

(Doc. 16-1 at 2). Eiglarsh considered the matter resolved and continued to represent Tisone.

On August 26, 2022, Tisone pleaded guilty to counts two (wire fraud), eight (bank fraud), fourteen (illegal monetary transactions), and eighteen (possession of ammunition by a convicted felon) and executed a plea agreement. (Cr-Doc. 54 and 55). On December 22, 2022, United States Probation filed an initial pre-sentence report (PSR). It calculated Tisone's

3

guideline imprisonment range to be 108 to 135 months, based on an offense level of 29 and criminal history category of III. (Cr-Doc. 67 at 39). The initial PSR held Tisone accountable for an intended loss amount of $10,792,154.17. (Cr-Doc. 67 at 18). Eiglarsh objected, arguing the initial PSR inflated the offense level and should have based it on actual loss rather than intended loss. (Cr-Doc. 71). The final PSR noted that if the Court sustained the objection, Tisone's offense level would be 26. (Cr-Doc. at 46).

On February 15, 2023, the government requested a 2-level reduction of the offense level based on Tisone's substantial assistance. (Cr-Doc. 86). Eiglarsh filed a 244-page sentencing memorandum and motion for downward variance. (Cr-Doc. 90). On February 21, 2023, the Court granted the government's request for a downward departure, overruled Tisone's objection regarding intended vs. actual loss, and sentenced Tisone to 87 months in prison, followed by three years of supervised release. (Cr-Docs. 93 and 94). On appeal, Tisone argued that the government violated the plea agreement by using intended loss to calculate the guideline sentence range, and that the Court erred by adopting the government's calculation. The Eleventh Circuit found no breach of the plea agreement and dismissed the appeal because Tisone knowingly and voluntarily waived his right to appeal his sentence. (Cr-Doc. 120). Tisone then timely filed his § 2255 motion.

## Legal Standards

### A. 28 U.S.C. § 2255

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating § 2255 relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice" (internal quotations omitted)). The petitioner bears the burden of proof on a § 2255 motion. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

### B. Effect of a Guilty Plea

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Thus, when a § 2255 motion collaterally challenges a conviction obtained through a guilty plea, "the inquiry

is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce,* 488 U.S. 563, 569 (1989). Alternatively, "[a] guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan,* 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson,* 397 U.S. 759, 770 (1970)).

### C. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. In *Strickland v. Washington,* the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* Failure to show either *Strickland* prong is fatal. *See Kokal v. Sec'y, Dep't of Corr.,* 623 F.3d 1331, 1344 (11th Cir. 2010) ("a court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden,* 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland,* 466 U.S. at 689). The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's

6

unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickand,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, 'it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test.'" *Id.* (quoting *Strickland,* 466 U.S. at 693).

## Discussion

Tisone asserts three claims of ineffective assistance of counsel, and he argues the government committed a *Brady* violation.

### A. Ground 1: Counsel failed to discuss discovery and the potential loss amount with Tisone

Tisone first claims Eiglarsh failed to review the government's discovery with him and failed to explain how intended loss could affect his sentencing guidelines range. Tisone argues that because he believed he would be held accountable for the actual loss, he did not knowingly and voluntarily plead guilty. He claims he would not have pleaded guilty if he had understood the potential consequences. Eiglarsh categorically denies Tisone's claims. In an affidavit submitted by the government, Eiglarsh swears he reviewed discovery

7

with Tisone and ensured Tisone thoroughly understood all sentencing issues, including the idea of intended loss. (Doc. 13-1).

In the plea agreement, Tisone acknowledged that he (1) entered in the agreement freely and voluntarily, (2) understood the nature of the offenses, (3) was completely satisfied with the representation and advice he received from his counsel, and (4) pleaded guilty because he was in fact guilty. (Cr-Doc. 54 at 18-19). The agreement included the maximum prison terms for each count—30 years for counts two and eight, 10 years for count fourteen, and 10 years for count eighteen. (Cr-Doc. 54 at 2).

In a change of plea hearing before United States Magistrate Judge Nicholas Mizell, Tisone swore to tell the truth, the whole truth, and nothing but the truth and expressed his understanding of the consequences of lying under oath. (Cr-Doc. 106 at 3-4). Tisone testified that he was fully satisfied with the counsel and advice given by his lawyer, he denied that anyone made any promises or assurances to get him to sign the plea agreement, and affirmed he was pleading guilty because he was in fact guilty. (Cr-Doc. 106 at 6-7). Judge Mizell ensured that Tisone knew the maximum prison sentences were 30 years for counts two and eight, 10 years for count fourteen, and 10 years for count eighteen. Tisone testified that he understood the potential penalties. (Cr-Doc. 106 at 9). He also affirmed that he discussed with his attorney how the sentencing guidelines might apply and testified he understood the sentence

8

ultimately imposed might be different from his attorney's estimate. (Cr-Doc. 106 at 11).

To satisfy the prejudice prong of *Strickland*, Tisone "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001). Tisone has not done so, even accepting his factual claims as true. Tisone implies some of his testimony at the change-of-plea hearing was false. He claims he withheld concerns about Eiglarsh because of the non-disparagement agreement. But that does not call into question the parts of Tisone's testimony relating to prejudice. "There is a strong presumption that statements made during the plea colloquy are true[,] and "a defendant bears a heavy burden to show that his statements under oath were false." *Patel v. United States,* 252 F. App'x 970, 975 (11th Cir. 2007). The Court thus accepts as true that Tisone pleaded guilty because he was guilty, knew the maximum prison terms for each count, and understood the Court might impose a sentence different than his attorney's estimate.

The record establishes that Tisone understood the potential consequences when he chose to plead guilty. Tisone is not entitled to § 2255 relief merely because Eiglarsh incorrectly predicted the offense level used at sentencing. The Eleventh Circuit rejected a similar argument in *Pease*. Pease claimed his plea was involuntary because his attorney underestimate

9

how severe the sentence would be. *Pease*, 240 F.3d at 941. The Eleventh Circuit found the plea voluntary because the trial court gave Pease the same warnings Judge Mizell gave Tisone. *See id.*; *see also Winthrop-Redin v. United States*, 767 F.3d 1210, 1216-17 (11th Cir. 2014) (finding declarations in open court and the terms of an initialed and signed plea agreement "powerful evidence…indicating that [the defendant's] guilty plea was knowing and voluntary") *and Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1975) ("a good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary").

Tisone has also failed to demonstrate prejudice from Eiglarsh's alleged failure to review discovery with him. Tisone does not claim he misunderstood the government's case against him, nor does he explain how a discussion of the discovery would have dissuaded him from pleading guilty. Ground 1 is denied.

### B. Ground 2: A conflict of interest between Tisone and his attorney led Tisone to plead guilty unknowingly, unintelligently, and involuntarily

Tisone next argues his dissatisfaction with Eiglarsh, his purchase of the domain names, and the non-disclosure agreement created an actual conflict of interest between Tisone and Eiglarsh. As a result, Tisone claims he did not feel free to divulge his dissatisfaction with Eiglarsh. The Court addressed the crux of this claim in the preceding section. It fails for the same reason as

10

Ground 1—Tisone cannot show prejudice. The record conclusively establishes that Tisone understood the consequences of pleading guilty—including the potential prison sentences the Court might impose—regardless of the status of his relationship with Eiglarsh. Because Tisone fails to establish prejudice under *Strickland*, Ground 2 is denied.

### C. Ground 3: Counsel filed an untimely sentencing memorandum that failed to properly address the pertinent issues

Tisone claims that prior to sentencing, Eiglarsh asked Tisone to prepare a sentencing memorandum. Tisone drafted a memorandum that included information specific to his case and unedited portions Tisone copies from a sentencing memorandum filed in another loan fraud case. Eiglarsh filed the memorandum without editing it. Eiglarsh then apparently discovered Tisone had copied the memorandum from another case and asked Tisone to rewrite it. Tisone complied and submitted a new memorandum that was 244 pages, with attachments. Eiglarsh filed it the night before sentencing. At the hearing, the Court admonished Eiglarsh for filing such a lengthy filing on such short notice. Tisone argues there is a reasonable probability the result of sentencing would have been different if Eiglarsh had filed a timelier memorandum that better addressed *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) and 18 U.S.C. § 3553(a).

Tisone again fails to show prejudice under *Strickland*. First, as evidenced by the transcript of the sentencing hearing, the Court read the memorandum before sentencing, the government did not object to the late filing, and sentencing proceeded normally. (Cr-Doc. 92 at 3-5). Second, the sentencing memorandum addressed the relevant § 3553(a) factors, Eiglarsh raised *Dupree* in an earlier filing, and Eiglarsh addressed *Dupree* and argued for a downward departure at the sentencing hearing. (Cr-Doc. 71, Cr-Doc. 90, Cr-Doc. 92). Tisone does not identify any arguments or information Eiglarsh should have, but did not, present to the Court. Ground 3 is denied.

### D. Ground 4: The government violated *Brady v. Maryland* and Tisone's due process rights by failing to disclose favorable, material evidence

Finally, Tisone claims the government failed to disclose statements made by a witness during the investigation of Tisone's crimes. In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused…violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). A *Brady* claim has three components: (1) the undisclosed evidence must be favorable to the accused because it is exculpatory or impeaching, (2) the evidence must have been suppressed by the state, either willfully or inadvertently, and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To show

12

prejudice, Tisone must establish a reasonable probability that the result of the proceeding would have been different had the government disclosed the evidence. *Id.* at 280.

The allegedly withheld evidence here involves two witnesses—R.S. and Z.S. They were employees of SK2 Capital, a company that processed PPP loan applications. R.S. told investigators that Z.S. processed Tisone's loan applications. Tisone claims he has since learned Z.S. told the government during an interview that R.S. handled all aspects of Tisone's applications. Tisone argues the evidence could have been used to impeach R.S. if he testified at a trial. He also argues it could have supported a defense that Tisone lacked fraudulent intent and instead relied on R.S.'s representations in seeking the loans.

The government disputes the veracity of Tisone's claim. It notes that Tisone does not state when, where, or how he learned of Z.S.'s alleged statement, nor has he submitted any proof of the statement's existence. The government has submitted the notes from two FBI interviews of Z.S.—one during the investigation and one conducted after Tisone filed his § 2255 motion. During the investigation, Z.S. confirmed that she processed Tisone's applications, which merely involved ensuring the applications were complete and included all supporting documentation. Z.S. understood the banks were required to validate the information. (Doc. 14-1). In the more recent

13

interview, Z.S. said she admitted to handling Tisone's loan applications in multiple FBI interviews. She also denied that R.S. personally handled all aspects of Tisone's loan applications—R.S. asked Z.S. to handle them because R.S. and Tisone were no longer on speaking terms. Finally, Z.S. said Tisone contacted her shortly after his arrest, said he would expose R.S., and asked Z.S. to "throw [R.S.] under the bus." R.S. denied having any other contact with Tisone. (Doc. 14-3).

Tisone is not entitled to § 2255 relief on this ground. First, his factual allegation underlying this claim is impermissibly vague and unsupported. Tisone provides no details about when Z.S. made the alleged statement to investigators or who she allegedly made the statement to. Likewise, he provides no details about how he learned of the statement. Nor does he identify any admissible evidence he could use to prove his claim.

Second, the Z.S.'s allegedly suppressed statement is not exculpatory. Tisone merely claims Z.S. told an interviewer that R.S. handled all aspects of Tisone's loan applications. Taken as true, the statement reveals a dispute over who at SK2 Capital processed Tisone's loan application. That dispute does nothing to negate Tisone's fraudulent intent when he submitted loan applications with false information. There is no reasonable probability that disclosure of the alleged statement would have changed the outcome.

Tisone argues he could have used the statement to support a defense that he had no fraudulent intent because he relied on R.S. when applying for the loan. But if R.S. personally handled Tisone's applications and somehow convinced Tisone to include false information, Tisone would have been aware of that. *Brady* does not require the government to disclose evidence the defendant possesses or could obtain with reasonable diligence. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005).

Third, "the Constitution does not require the prosecutor to share all useful information with the defendant" prior to a guilty plea. *United States v. Ruiz,* 536 U.S. 622, 633 (2002). The Supreme Court reasoned that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*." *Id.* at 629. Thus, the Constitution does not require "preguilty plea disclosure of impeachment information." *Id.* So even assuming Tisone could have used Z.S.'s alleged statement to impeach R.S. at trial, *Brady* did not require the government to disclose it before Tisone pleaded guilty.

Tisone has not stated facts that, if true, would establish a *Brady* violation. Ground 4 is denied.

### Evidentiary Hearing

A court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to

15

no relief." 28 U.S.C. § 2255(b). "If the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quoting *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002)). A petitioner need only allege, not prove, facts that would entitle him to relief. *Id.* However, the alleged facts must be reasonably specific and non-conclusory. *Aron,* 291 F.3d at 715 n.6; *see also Allen v. Sec'y, Fla. Dep't or Corr.*, 611 F.3d 740, 745 (11th Cir. 2010), *cert denied*, 563 U.S. 976 (2011). Further, if the allegations are "affirmatively contradicted by the record" and "patently frivolous," the court need not hold an evidentiary hearing. *Id.*

Tisone is not entitled to a hearing because each of his is claims is facially insufficient, refuted by the record, or both.

## Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

16

*Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citations omitted).  Tisone has not made the requisite showing here and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is

**ORDERED**:

Petitioner Daniel Joseph Tisone's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED**.  The Clerk is **DIRECTED** to enter judgment and close the civil case.

**DONE AND ORDERED** in Fort Myers, Florida on May 19, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:   All Parties of Record